> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 2, 2022[*]
Decided September 8, 2022

**Before**

DIANE P. WOOD, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 21-3029

| | |
|---|---|
| ROBERTO SILVA, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, Western Division. |
| *v.* | |
| | No. 20 C 50007 |
| JAMES READ and DEKALB COUNTY, ILLINOIS, | Iain D. Johnston, |
| *Defendants-Appellees.* | *Judge.* |

## O R D E R

Roberto Silva, who was a pretrial detainee in Illinois, appeals the entry of summary judgment on his claim that a correctional officer, James Read, failed to protect him from another detainee's attack. But because Silva has not produced sufficient evidence to create a fact issue over whether Read acted unreasonably by failing to separate the two men, we affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Because we are reviewing the entry of summary judgment, we view the facts in the light that most favors Silva. *Henry v. Hulett*, 969 F.3d 769, 774 (7th Cir 2020) (en banc); FED. R. CIV. P. 56. In early 2019, Silva was a pretrial detainee at the DeKalb County Jail. Another detainee, Brandon Mills, was moved into Silva's cellblock. Silva watched as Mills paced in the dayroom, kicked a window, and behaved erratically. By this time Read, the correctional officer, had entered the dayroom, and Silva told Read that Mills made him feel uncomfortable. Read asked Mills what was wrong and offered to relocate him to another cellblock. Mills replied, "If Mr. Silva wants to fight, we can fight." Silva, who denied having any prior conflict with Mills, said to Read that he did not know why Mills made this remark. Silva added that he had seen Mills arguing and fighting with other inmates. After Read spoke with Mills, Silva told Read that he felt threatened and wanted to move to a different cellblock if Mills remained. Read declined to move either detainee and returned to the control room. Read says he felt that Mills had calmed down after their conversation and that he did not think that Mills or Silva had threatened the other.

Read was no longer on duty the next morning when Mills opened Silva's cell door and entered. Silva, who had been sitting on his bed, stood up and told Mills to leave. Mills approached Silva and began punching him in the face. Silva managed to push Mills out of the cell and use the intercom to call for assistance. Correctional officers soon arrived. Silva suffered a broken nose and a split lip that required stitches.

Silva turned to federal court for relief. As relevant to this appeal, he asserted that Read violated his due-process rights by failing to protect him from Mills's attack.

Discovery ensued, and Silva moved for recruitment of counsel. The district court denied the motion based on its conclusion that Silva's claims were not particularly complex or beyond his capabilities of presenting them. Silva also sought to extend the discovery schedule, but the court determined that he had not justified the need for an extension and denied the request without prejudice. (The court invited Silva to renew his motion for extension, as long as he specified what obstacles prevented him from meeting the deadline. But Silva never renewed the motion.)

The court ultimately granted the defendants' motion for summary judgment. However, because Silva did not respond appropriately to the defendants' statement of material facts in compliance with the local rules, the court accepted the defendants' version of the facts and construed them in the light most favorable to Silva. Describing

the case as a "close call," the court concluded that Silva had not introduced evidence sufficient to show that the information available to Read would have put a reasonable officer on notice that Mills posed a heightened risk to Silva's safety. At the time Read entered the dayroom, the court explained, Mills had not threatened Silva or any other inmate, nor were any of Mills's actions directed toward Silva. Alternatively, the court stated, Read was shielded by qualified immunity because his actions had not violated a clearly established constitutional right—i.e., a right for Silva to be separated from Mills under the circumstances of this case.

On appeal, Silva first challenges the court's summary judgment ruling on his failure-to-protect claims. Silva contends that the court overlooked evidence—in his and Read's deposition testimony as well as Read's recorded notes—that Read was aware of Mills's threatening and aggressive behavior but nonetheless declined to separate Mills from him, report Mills's suspicious behavior to superiors, grant Silva's request to move to a different cellblock, or take other corrective action.

Because Silva was a pretrial detainee, his failure-to-protect claim arises under the Fourteenth Amendment's Due Process Clause. *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022). To prevail on this claim, Silva must show, among other things, that a reasonable officer in Read's position would have recognized that Mills posed a substantial risk of harm. See *Kemp v. Fulton County*, 27 F.4th 491, 496–97 (7th Cir. 2022).

But Silva failed to adduce sufficient evidence for a factfinder to conclude that Read acted unreasonably in failing to protect him from the attack. See *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). Read's deposition testimony may have acknowledged Mills's erratic conduct in the dayroom, but this evidence does not support an inference that an objectively reasonable person would have been put on notice of a substantial risk that Mills posed to Silva's safety. Read testified, for instance, that Mills did not make any physical advances toward Silva, that Mills did not directly threaten to attack Silva, and that after their conversation Mills appeared to have calmed down and become less agitated. Silva highlights Mills's comment to Read that he would fight Silva if Silva wished, but this statement is not sufficient for a jury to conclude that a reasonable officer in Read's shoes would have appreciated the risk entailed by not separating the two men. See *id*. at 497.

Silva also challenges the district court's conclusion that Read was entitled to qualified immunity. But because the court correctly concluded that Silva did not create a fact issue with regard to his failure-to-protect claim, we need not reach this issue.

We briefly turn to Silva's arguments regarding the district court's pretrial rulings. First, Silva challenges the district court's denial of his motion for recruited counsel—a request he deems necessary based on his incarcerated status, his limited access to resources, and the "close" nature of the court's decision. But the court appropriately exercised its discretion to deny the motion. The court reasonably determined that Silva appeared competent to litigate his claims on his own, as demonstrated by the quality of his pleadings and discovery filings (which, the court noted, showed a "sophisticated" grasp of the facts and law), his education (associate's degree) and work history (former business owner), and the straightforward nature of both his claims and the applicable legal standard. See *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). To the extent Silva thinks he was disadvantaged having to litigate against a seasoned opposing counsel, the court was required to consider only whether he was personally competent to litigate the case, not whether he could present the case as effectively as a lawyer. See *id.* at 654–55.

Silva also challenges the denial of his motion to extend discovery. But he abandoned this challenge when he failed to comply with the court's directive that he later renew and adequately justify the need for such a motion.

Lastly, Silva argues for the first time that the court should have (1) compelled the defendants to produce surveillance footage and (2) allowed him to amend his complaint to add a *Monell* claim against the jail. But Silva waived these arguments by not raising them first in the district court. *Mahran v. Advocate Christ Med. Ctr.*, 12 F.4th 708, 710 (7th Cir. 2021).

Silva's other arguments are not developed and require no further discussion.

AFFIRMED